# PD-1097-15

PD-1097-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 8/24/2015 12:00:00 AM
Accepted 8/25/2015 5:00:08 PM
ABEL ACOSTA
CLERK

## TEXAS COURT OF CRIMINAL APPEALS

―――――――――――――――――――――――――――――――――――

ANDY TORRES RAMOS             **APPELLANT**

### VS.

THE STATE OF TEXAS             **APPELLEE**

―――――――――――――――――――――――――――――――――――

### Appealed from the 36th Judicial District Court

### San Patricio County, Texas

### Tr.Ct.No. S-13-3236-CR

### APPELLATE CASE NO. 13-14-00199-CR

### 13TH COURT OF APPEALS OF CORPUS CHRISTI, TEXAS

―――――――――――――――――――――――――――――――――――

## APPELLANT'S BRIEF

―――――――――――――――――――――――――――――――――――

### RANDALL E. PRETZER, PLLC

### State Bar No. 16279300

### P.O. Box 18993

### Corpus Christi, Texas 78480

### BUS: (361) 883-0499

### FAX: (361) 883-2290

### E-Mail: repretzer@gmail.com

## ATTORNEY FOR APPELLANT

## IDENTITY OF PARTIES AND COUNSEL

### JUDGE PRESIDING

THE HONORABLE RON CARR

36$^H$ JUDICIAL DISTRICT COURT

SAN PARTRICIO COUNTY COURTHOUSE

SINTON, TEXAS 78387

### COUNSEL FOR THE STATE

MR.SAMUEL SMITH

ASSISTANT DISTRICT ATTORNEY

P.O. BOX 1393

SINTON, TEXAS 78387

### APPELLANT

MR. ANDY TORRES RAMOS

P.O. BOX 83

PORTLAND, TEXAS 78374

### APPELLANT'S COUNSEL

MR. RANDALL E. PRETZER, PLLC

ATTORNEY FOR APPELLANT

P.O. BOX 18993

CORPUS CHRISTI, TEXAS 78480

i

# TABLE OF CONTENTS

                                                    **Page**

**IDENTITY OF PARTIES AND COUNSEL** . . . . . . . . . . i

**TABLE OF CONTENTS** . . . . . . . . . . . . . . . . . ii

**INDEX OF AUTHORITIES** . . . . . . . . . . . . . . iii-iv

**STATEMENT REGARDING ORAL ARGUMENT** . . . . . . . . . v

**PROCEDURAL HISTORY** . . . . . . . . . . . . . . . . 1-2

**STATEMENT OF THE CASE** . . . . . . . . . . . . . . 2-4

**STATEMENT OF FACTS** . . . . . . . . . . . . . . . 3-13

**SUMMARY OF THE ARGUMENT** . . . . . . . . . . . . . 13

**SOLE GROUND FOR REVIEW** . . . . . . . . . . . . . . 14

## SOLE GROUND FOR REVIEW

THE APPELLATE COURT ERRED WHEN IT FAILED TO FIND THAT THE EVIDENCE INTRODUCED AT TRIAL WAS FACTUALLY AND LEGALLY INSUFFICIENT TO SUPPORT APPELLANT'S CONVICTION FOR AGGRAVATED ASSAULT, ALL INVIOLATION OF THE 5TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

ARGUMENT AND AUTHORITIES . . . . . . . . . . . 14-20

PRAYER FOR RELIEF . . . . . . . . . . . . . . 20

CERTIFICATE OF SERVICE . . . . . . . . . . . 21

CERTIFICATE OF COMPLIANCE, RULE 9.4(i), T.R.A.P. 21

APPENDIX . . . . . . . . . . . . . . . . . 22

# INDEX OF AUTHORITIES

Cases:                                                    Page


Hightower v. State, 389 S.W.2d 674 (Tex.Crim.

 App.1965)  . . . . . . . . . . . . . . . . . . . . . . .  15

Crocker v. State, 573 S.W.2d 190 (Tex.Crim.App.1978) 15

Moore v. State, 531 S.W.2d 140 (Tex.Crim.App.1978 .  15

Houston v. State, 663 S.W.2d 455 (Tex Crim.App.1984) 15

Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781,61

 L. Ed.2d 560 (1979) . . . . . . . . . . . . . . . . . 15

Girard v. State, 631 S.W.2d. 162, (Tex.Crim.App.

 [Panel Op] 1982)  . . . . . . . . . . . . . . . . . . 15

Wilson v. State, 654 S.W.2d 465 (Tex.Crim.App.1985). 16

## STATEMENT REGARDING ORAL ARGUMENT

Appellant waives oral argument.

# TEXAS COURT OF CRIMINAL APPEALS

_____

ANDY TORRES RAMOS                 APPELLANT

VS.

THE STATE OF TEXAS                APPELLEE

_____

Appealed from the 36th Judicial District Court

San Patricio County, Texas

Tr.Ct.No. S-13-3236-CR

APPELLATE CASE NO. 13-14-00199-CR

13TH COURT OF APPEALS OF CORPUS CHRISTI, TEXAS

_____

## APPELLANT'S BRIEF

_____

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

## PROCEDURAL HISTORY

ANDY T. RAMOS, hereinafter referred to as Appellant, respectfully petitions the Court of Criminal Appeals to review the judgment of the 13th Court of Appeals which had affirmed his conviction as per that judgment in Cause No. 13-14-00199-CR as set forth in the Appendix, attached

1

hereto and incorporated by reference herein for any purpose.

## STATEMENT OF THE CASE

On January 27, 2014, a jury was selected in this case. On January 28, 2014 the Appellant pled **NOT** guilty to charge of Aggravated Assault, a second degree felony, under Cause No. S-13-3236-CR, entitled **The State of Texas v. Andy Torres Ramos**. (RR, Vol. 3, pp. 14-15). Subsequently, the state presented to the jury its evidence through testimony and exhibits. Appellant did testify and presented to the jury his evidence through testimony. Thereafter, the state and Appellant rested. After deliberation, the jury returned with a unanimous verdict of guilty to the charge of Aggravated Assault. (RR, Vol. 4, page 34). On January 29, 2014, the court again convened to hear evidence during the punishment phase of this trial. The state after it rested and closed, presented argument to the court regarding sentencing. The Appellant presented his evidence through

2

two witnesses' testimony. Thereafter, Appellant rested, closed, and presented argument regarding sentencing. The jury sentenced Appellant to three (3) years in prison, but recommended to the court that the sentence be probated. The jury did not asses a fine. (Vol. 5, pp. 27-28).

Appellant perfected his appeal by filing with the District Clerk of San Patricio County, Texas, in writing his <u>Notice of Appeal</u>, on January 29, 2014. (CR, Vol. 1, page 65).

<u>STATEMENT OF FACTS</u>

Again, On January 27, 2014, a jury was selected in this case. On January 28, 2014 the Appellant pled <u>NOT</u> guilty to the charge of Aggravated Assault, a second degree felony, under Cause No. S-13-3236-CR, entitled <u>The State of Texas v. Andy Torres Ramos</u>. (RR, Vol. 3, pp. 14-15). Subsequently, the state presented to the jury its evidence through testimony and exhibits. Appellant did

testify and presented to the jury his evidence through testimony.

During the trial on the merits, the state called several witnesses to testify regarding the charge of Aggravated Assault as set forth in the indictment to which Appellant had pled <u>NOT</u> guilty.

The first witness called by the state was Deputy Sheriff Jay Daniel Hinojosa, who testified as follows: that on or about July 14, 2013, he was dispatched to County Road 61 regarding an alleged vehicular assault involving Victoria Renee Martinez (hereinafter generally referred to as the victim); that he interviewed the victim and took pictures of her injuries allegedly inflicted on her person as a result of the alleged assault; that four of these pictures were offered and received into evidence; that she had redness on her throat, her neck and the palms of her hands; that she had some pain in her feet; that there was a picture of her purse and six or seven Hydrocodone pills found in that same purse belonging to the victim; <u>that the victim</u>

4

admitted to the deputy that the Hydrocodone pills **belonged to her**; [all subsequent emphases are Appellant's]; that the purse was found in the car driven by Appellant and was not at the place where the victim was found but subsequently delivered to the deputy; that due to the injuries that the victim sustained, an ambulance was dispatched to the scene and transported the victim to the hospital; **that the deputy did not, however, see any car hit the victim, nor was there anything in his report that any other witness saw Appellant's car hit the victim**; that the victim's Hydrocodone pills could cause intoxication; that the victim told him that the car had driven over her back; that he was not aware that the Appellant's Ford Mustang weighed a little less than 3,400 pounds, but he was aware that the car was heavy. (RR, Vol. 3, pp. 24-46).

The next witness called by the state was Sergeant Steven Loving, who testified as follows: that he prepared the offense report that would be submitted to the District Attorney for review and possible prosecution;

that the victim did bring her purse to his office to demonstrate cuts and rips (teeth marks?); that he had no idea of the condition of the purse prior to the alleged assault; that the victim related to him that she felt the back TIRE of Appellant's car on her back; that he was informed that the victim was taken to the hospital, treated and released that SAME DAY; and, that there were no torn or ripped clothing, or any other articles with tire-tracks, belonging to the victim that were tagged and prepared as evidence in this case. (RR, Vol. 3, 46-67).

The next witness called by the state was the alleged victim, Victoria Renee Martinez, who testified as follows: that on the day of the incident Appellant had picked her up at her home, they had driven to Corpus Christi, Texas, and then Appellant had driven her back to her home; that while in Appellant's car and in front of her home he had asked her to have sex with him; that, though they had had intimate relations in the past, she had refused and an argument ensued wherein Appellant had accused her of seeing someone else; that Appellant left

6

with her still in the car; that Appellant wanted to see her cell phone to see who she had been calling; that while he was driving around the neighborhood he was trying to keep her in the car by pulling on her arms and purse straps; that she was screaming for him to "Let me out"; that Appellant was driving recklessly; that he finally stopped and pushed her out of the car on the passenger side, where she fell under the car with her feet next to the rear tire on the driver's side of the car; that this driver's side rear tire went over her back; that she was in pain; that the rear tire had not made any marks on her back; that she DENIED that she told Deputy Hinojosa that the Hydrocodone pills had belonged to her; that she had in the past been addicted to Hydrocodone; that she was admitted and released from the hospital the same day; that there was no evidence that she had lacerations, broken bones or ruptured organs such as her lungs, spleen, pancreas, liver, stomach or intestines; and, that she had no follow-up examination with a physician. (RR, Vol. 3, pp. 68-1120).

7

Thereafter, the state called Gracie Orta, who testified as follows: that on the day of this incident she heard screaming coming from a car which would stop and start again; that it was a white car with a red stripe; that a lady was screaming, kicking and trying to get out of the car; that the car finally left; that she had no idea what the argument may have been; and, <u>that she did not see the car strike anyone</u>. (RR, Vol. 3, pp. 114-117).

The next witness called by the state was Israel Flores, who testified as follows: that on the day of the incident he and Ms. Orta where in his front yard when he heard a lady screaming; that he and his sister ran over to the area where the screams came from and saw a young lady being pulled into a car with arms and one leg still hanging out; that Mr. Flores got into his car and pursued the fleeing vehicle which was white with a red stripe; that he found the lady by the side of the road about a mile from his house; that he had no idea what the argument was about and he had no idea what the victim's

relationship had been with the driver; and, <u>that he did not see the vehicle strike anyone</u>. (RR, Vol. 3, pp. 118-123).

Thereafter, the state called Randall Hatton, who testified as follows: that on the day of the incident a white car with a red stripe with the passenger door open, pulled up near the place where he and his son were working on a car; that a lady in the car was screaming for help; that he and his son attempted to render assistance but the car left; <u>that he did not see the car strike anyone</u>; and, that he had no idea what the argument may have been about. (RR, Vol. 3, pp. 124-128).

Finally, the state called James Allen Baugus, who testified as follows: that on the day of the incident he, along with Randall Hatton and son, basically saw the same events regarding the car and the victim; that he did pursued the car with the victim therein and finally found her standing by the road; that she appeared to be very upset; <u>that he did not see the car strike anyone</u>; and,

9

that he had no idea what the argument was about. (RR, Vol. 3, pp. 129-137).

The state rested.

Then counsel for the Appellant notified the court that the Appellant would, in fact, testify, along with other witnesses for the defense.

The first defense witness called was Gracie Torres, who testified as follows: that she was the mother of the Appellant; that beginning sometime in 2012, Appellant and Victoria Martinez, the victim, lived in her household for about a year; that during that time the victim told her that she had become addicted to Lortab; that in the past the victim's mother would give the victim Hydrocodone because she was always in pain; that the victim had asked her not to tell Appellant about the Lortab problem because it would upset the Appellant; that the Appellant and the victim argued frequently; that the victim was usually the aggressor in such arguments, screaming and yelling at the Appellant; that she never saw the Appellant do anything physically to hurt the victim; that

Appellant would just walk away from the victim when she became argumentative and aggressive; (RR, Vol. 3, pp. 139-152).

Then the defense called Nicole Montalvo, who testified as follows: that the Appellant was her brother-in-law; that back in 2012, she lived in the household with Appellant and the victim, along with other family members; that she observed the victim taking Hydrocodone and Lortab on a daily basis; that the Appellant and the victim would frequently get into arguments because the victim did not have either of these drugs on hand; that the victim was usually the aggressor in these arguments since Appellant did not want her to have these drugs; that again, the Appellant would try to calm the crises generated by the victim or would just walk away from such confrontations regarding the victim's addiction; and, that Appellant was never physical with the victim. (RR, Vol. 3, pp. 152-162).

Finally, the Appellant was sworn and testified as follows: that on the day of the incident he did have an

11

**argument with the victim about her use of those prescription pills; that there were in the past frequent arguments regarding such consumption of Hydrocodone and Lortab**; that on the day of this incident he believed that she had them in her purse; that on the day of the incident she kept trying to exit the vehicle; that he did not want her to leave his car because she was depressed because of a recent miscarriage; that he felt she might abuse the drugs she had in her possession and injure herself; that she in fact had had two (2) miscarriages which he personally believed had brought about such gynecological problems to include depression; that he never tried to push her out of his car; that he never tried to choke her; that he tried to keep her from jumping out of his car when it was moving; that he never tried to run her over with his car; and, that when she finally exited his car, he looked back, saw that she was <u>standing</u> and concluded that she was only two blocks (five-hundred [500] yards), more or less, from her home; and, that he left because she was standing and not lying in the middle

of the street, that she was not far from her home, and that she had no dangerous medications since he had taken the Hydrocodone from her. (RR, Vol. 3, pp.163-176).

The state called as a rebuttal witness, Deputy Steven Loving in an effort to clarify the distance that the victim may have been from her home when she finally left Appellant's car. However, it appeared that the Deputy Loving's testimony was tentative and in Appellant's opinion, inconclusive at best, regarding his estimate of that particular distance. (RR, Vol. 3, pp. 177-184).

The state rested and closed.

The defense rested and closed.

## SUMMARY OF THE ARGUMENT

The state utterly failed to offer sufficient evidence to support the jury's finding that Appellant had, beyond a reasonable doubt, committed the offense of aggravated assault, all in violation of the 5th and 14th Amendments to the United States Constitution.

## SOLE GROUND FOR REVIEW

**THE APPELLATE COURT ERRED WHEN IT FAILED TO FIND THAT THE EVIDENCE INTRODUCED AT TRIAL WAS FACTUALLY AND LEGALLY <u>INSUFFICIENT</u> TO SUPPORT APPELLANT'S CONVICTION FOR AGGRAVATED ASSAULT, ALL INVIOLATION OF THE 5TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION.**

## ARGUMENT AND AUTHORITIES

Appellant contends that the evidence introduced during the trial was insufficient to support his conviction under the indictment.

Formerly, Appellant was charged by indictment with aggravated assault, which stated in part as follows:

". . . that ANDY RAMOS TORRES on or about 14th day of July, A.D. 2013 and anterior to the presentment of this indictment, in the County and State aforesaid, did then and there intentionally, knowingly or recklessly cause bodily injury to Victoria Martinez by striking the said Victoria Martinez with a deadly weapon, to wit: a vehicle, which in the manner of its

14

use of intended use was then and there capable of causing serious bodily injury or death. (CR, Vol. 1, pp. 5-6).

The courts have held that the state always has the burden to prove beyond a reasonable doubt that the accused committed the criminal acts charged in the indictment, Hightower v. State, 389 S.W.2d 674 (Tex.Crim.App.1965).  Furthermore, the state being bound by its allegations in the indictment must prove them beyond a reasonable doubt.  Crocker v. State, 573 S.W.2d 190 (Tex.Crim.App.1978); Moore v. State, 531 S.W.2d 140 (Tex.Crim.App.1978).  The courts have held that in all criminal cases regarding points of error for insufficient evidence, the courts must examine the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  Houston v. State, 663 S.W.2d 455 (Tex Crim.App.1984); Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Girard v. State, 631 S.W.2d. 162, (Tex.Crim.App.

15

[Panel Op] 1982). In addition, the courts have held that this test for the sufficiency of the evidence would be applied equally to direct and circumstantial evidence cases. <u>Wilson v. State</u>, 654 S.W.2d 465 (Tex.Crim.App.1985).

In this particular case, this Court of Criminal Appeals may note the following:

1. That Victoria Martinez, the alleged victim, would want the jury to believe that when and if Appellant's Ford Mustang allegedly ran over her upper torso or her back, it was possible for her to sustain <u>NO</u> broken bones, <u>NO</u> ruptured spleen, <u>NO</u> ruptured pancreas, <u>NO</u> ruptured liver, <u>NO ruptured</u> stomach or intestines, or <u>NO</u> serious lacerations;

2. That, other than the alleged victim, no one saw Appellant run over her with his 3,400 (more or less) pound car;

3. That no one saw Appellant <u>attempt</u> to run over the alleged victim with his car;

4. That there was evidence that Appellant was attempting to prevent the alleged victim from throwing herself out of his car;

5. That there was evidence that the Appellant (with his knowledge of her past emotional proclivities) was attempting to prevent the alleged victim from injuring herself;

6. That the alleged victim had been in the past, (and by her own admission), addicted to Hydrocodone and Lortab, which affected her past demeanor and conduct;

7. That such addiction probably had again, on the day of the incident, surely been a factor precipitating her emotional state, since the investigating officer obtained from her an admission that the

Hydrocodone found in her purse that same day, belonged to her;

8. That if the Court of Appeals examined the exhibits received into evidence, <u>particularly the one showing the alleged victim's face</u>, it may find that her eyes were those of one who had consumed substances which had an intoxicating effect precipitating excessive emotional emoting during this incident;

9. That the alleged victim's history, as set forth by the Appellant, of two (2) unfortunate miscarriages, may have exacerbated the victim's hysterical conduct;

10. That the alleged victim's history of argumentation and debate with the Appellant demonstrated that she was an unhappy, unpredictable and troubled individual, who could

direct abusive outburst against Appellant due to the demands of her addiction;

11. That if anyone was reckless in their conduct, the actions of the alleged victim on that day of the incident were consistent with her past abusive and irrational conduct brought on by her addiction and tragic miscarriages; and,

12. Finally, Appellant askes in all humility how could the jurors render its verdict of guilty, considering the INCREDULOUS testimony of the alleged victim who insisted that the Appellant had run over her with his car, when there was sufficient evidence before the same jurors that such an event never happened! *Sacre Blue*!

Accordingly, the state failed to meet its burden of proof and the jury should have found that there was, as a matter of law and fact, insufficient evidence to prove the elements of the offense of aggravated assault. Furthermore, citizens should not be convicted by

19

inconclusive and ambiguous evidence, which does not meet the **very high burden of proof** as set forth by the time tested phrases "beyond a reasonable doubt," or "to a moral certainty."

## PRAYER FOR RELIEF

For **ALL** the reasons stated above, Appellant respectfully requests that the honorable Court of Appeals reverse the trial court's judgment, and render a finding that Appellant is **NOT** guilty of the offense of aggravated assault as had been set forth in the indictment against him.

RESPECTFULLY SUBMITTED:

**/S/   Randall E. Pretzer**
**Randall E. Pretzer, PLLC**
**Attorney for Appellant**
**State Bar No. 16279300**
**P.O. Box 18993**
**Corpus Christi, Texas 78480**
**BUS: (361) 883-0499**
**FAX: (361) 883-2290**
**E-Mail: repretzer@gmail.com**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of Appellant's Brief was delivered to the San Patricio County District Attorney's Office, ATTN: Appellant Division, 400 West Sinton Street, Sinton, Texas 78387, by hand-delivery; and, to The State Prosecuting Attorney, P.O. Box 13046, Austin, Texas 78711-3046, on August 24, 2015, by first class mail.

/S/   Randall E. Pretzer
Randall E. Pretzer, PLLC
Attorney for Appellant

## CERTIFICATE OF COMPLIANCE
## UNDER RULE 9.4 (i), TRAP

Please be advised that in compliance with Texas Rule of Appellate Procedure 9.4(i)(3), as amended, I certify that the number of words in this brief, excluding those matters listed in Rule 94 (i)(1), is **3,110** as per the computer count.

/S/   Randall E. Pretzer
Randall E. Pretzer, PLLC
Attorney for Appellant

**APPENDIX**



# NUMBER 13-14-00199-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

ANDY TORRES RAMOS,

                **Appellant,**

v.

THE STATE OF TEXAS,              **Appellee.**

---

**On appeal from the 36th District Court of
San Patricio County, Texas.**

---

# MEMORANDUM OPINION

## Before Justices Rodriguez, Garza and Longoria
## Memorandum Opinion by Justice Garza

Appellant, Andy Torres Ramos, was convicted of aggravated assault, a second-degree felony, and was sentenced to three years' imprisonment. *See* TEX. PENAL CODE ANN. § 22.02 (West, Westlaw through Ch. 46, 2015 R.S.). The prison sentence was suspended and Ramos was placed on community supervision for three years. By one issue on appeal, he contends the evidence was insufficient to support his conviction. We affirm.

23

## I. BACKGROUND

Jay Hinojosa testified that he was a San Patricio County Sheriff's deputy on July 14, 2013. On that date, he was dispatched to a call reporting a vehicle assault on County Road 61 near Sinton. When he arrived, the complainant, Victoria Martinez, appeared injured and in pain. Hinojosa took photographs of Martinez's injuries. The photographs, which were entered into evidence, depict minor bruises and abrasions to Martinez's hand, leg, neck, and torso. Martinez was taken to a hospital and was treated and released the same day.

On cross-examination, in response to a question by defense counsel, Hinojosa stated that Martinez reported that a car "[r]an over the lower portion of her body." He agreed with defense counsel that Martinez said "that the tire was on her back as he drove away." He did not, however, take photographs of Martinez's back.

Hinojosa testified that he was later provided with Martinez's purse, which was recovered from the car that allegedly ran over her. The purse contained, among other things, what Hinojosa believed to be hydrocodone pills. Hinojosa stated that, according to Martinez, the pills belonged to her and were for "an old prescription," but he did not arrest Martinez because "[t]he purse wasn't in her possession, the pills were not in her possession at the time." Hinojosa conceded that a person could possibly become "intoxicated" by using hydrocodone.

Martinez testified that she and Ramos were in a relationship but that they broke up in April. Ramos texted her that he missed her, so she agreed that he could pick her up in his white Ford Mustang and take her to Corpus Christi. They then returned to Sinton.

Martinez testified:

I was about to get out of the car and he wanted to have sex with me. I told him no. He said he was claiming that I was seeing somebody else and that's why I didn't want to. From then that's when it started. As soon as I was about to get out of the car, he took off . . . . I was unable to get out of car. Just—as soon as I was attempting to get out of the car he just floored it, just pushed the gas and took off around the block. . . .

24

I wanted to get out.  He was driving very reckless and fast.  I was scared.  I didn't want to be in the car with him.  I was going to—any chance that I got that he was going to slow down, I wanted to get out of the car. . . .

So we go over the railroad tracks, we take a left.  You go left and it curves but he makes a U-turn.  He doesn't go all the way down the road.  He makes a U-turn.  I almost fell out of the car but he kind of pulls me back because my door was open.  At that time he starts slowing down and he's trying to get my purse. . . .

Um, at that point he tried—he slowed down and he's trying to get the purse and we're still arguing and I want to get out of the car and I'm yelling at the top of my lungs.  My door is slightly open because I'm holding it with my feet.  So he finally gets a hold of just the purse strap because it's still around my shoulder and he just starts pulling it towards him and that's when it was choking me. . . .  I'm scared for my life.  I'm trying to scream but I can't because I'm being choked, I can't breathe. . . .

At that point, when I told him that I couldn't breathe he stopped, he let go and then he took off.  Just drove again, pushed the pedal. . . .

We're driving, he stops the car, he gets a hold of my purse . . . [f]rom behind me.  From that point, when he has the car stopped I had my door open still from with my feet pushing it, so when he stops the car, I'm getting out of the car sitting with my feet out.  He gets a hold of the purse—as soon as he gets a hold of the purse, he pushes me.  I felt his hand, I end up on the floor. . . [o]utside the car.  On the road.  Half the road where my head is where the grass starts.  I'm under the car.  I could feel the heat of the car.  I felt the back tire, the driver's side back tire around my feet and in a split second . . . [t]he tire went over my back.

Martinez stated that she was in "excruciating pain" and "couldn't really believe what happened."[1]  She denied that the hydrocodone pills found in her purse belonged to her, but she admitted having

---

[1] Martinez stated that a female bystander came to her after the incident to ask if she was okay, but the trial court sustained defense counsel's hearsay objection to that testimony.  Later, referring to the bystander, Martinez stated:  "I was shocked, I didn't think the car had went over me. She assured me it

a "dependency" on hydrocodone for "about a year or two" several years ago when she was prescribed the medication for a broken hand and "busted head."

On cross-examination, when asked "how did you exit the vehicle," Martinez replied:

"When he had stopped, after he had pulled my purse from behind me, he pushed me." She clarified that the car ran over her back and her feet. She conceded that she suffered no deep lacerations, broken bones, ruptured organs, internal bleeding, or severe bruising as a result of the incident. She also conceded that she was wearing glasses at the time of the incident but that the glasses were not damaged. Martinez denied that she and Ramos were arguing about the hydrocodone pills, and she denied that Ramos was actually trying to restrain her from jumping out of the car.

Three eyewitnesses testified that they observed a young woman in a white Ford Mustang, with the door open, screaming. They later saw the woman outside the car on the ground. They did not see the car strike anyone.

Ramos called two witnesses, his mother and sister-in-law, who each testified that Martinez had a hydrocodone problem. They did not see the incident in question. Ramos himself testified that he got into an argument with Martinez over the hydrocodone pills. He stated that "[s]he kept trying to exit the vehicle." When asked why he did not want Martinez to leave the car, Ramos stated:

> I felt if she would have gotten away and I would have dropped her off at her house, she would have abused her prescription pills and probably would've caused bodily harm to herself. She was really depressed coming from a— she had just recently had an abortion—not an abortion—it was a miscarriage and I believe that's what caused the root of everything. . . .
>
> I was trying to hold on with one hand and, you know, keep her from grabbing, from falling out of the car with the other hand. grabbing, from falling out of the car with the other hand.

_____

did." However, defense counsel also objected to this statement on hearsay grounds and the trial court sustained the objection and struck the testimony from the record.

Ramos denied pushing Martinez out of the car or running over her.

The jury convicted Ramos of aggravated assault and sentenced him to three years' imprisonment. The trial court suspended the sentence and placed Ramos on community supervision. Ramos was also ordered to pay $14,450 in restitution to Martinez.[2] This appeal followed.

## II. DISCUSSION

### A.    Standard of Review and Applicable Law

In reviewing the sufficiency of evidence supporting a conviction, we consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013); *see Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We give deference to "the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19). When the record of historical facts supports conflicting inferences, we must presume that the trier of fact resolved any such conflicts in favor of the prosecution, and we must defer to that resolution. *Padilla v. State*, 326 S.W.3d 195, 200 (Tex. Crim. App. 2010).

Sufficiency is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.* A hypothetically correct jury charge in this case would state that Ramos is guilty if he intentionally, knowingly, or recklessly caused bodily injury to Martinez by striking her with a vehicle.[3] *See* TEX. PENAL CODE ANN. § 22.02.

---

[2] Ramos does not challenge the assessment of restitution on appeal.

[3] Ramos does not dispute that a vehicle is a deadly weapon as defined by statute. *See* TEX. PENAL CODE ANN. § 1.07(a)(17) (West, Westlaw through Ch. 46, 2015 R.S.) ("'Deadly weapon' means:  (A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious

"Bodily injury" means "physical pain, illness, or any impairment of physical condition." *Id.* § 1.07(a)(8) (West, Westlaw through Ch. 46, 2015 C.S.). A person acts intentionally with respect to the result of his conduct when it is his conscious objective or desire to cause the result. *Id.* § 6.03(a) (West, Westlaw through Ch. 46, 2015 R.S.). A person acts knowingly with respect to the result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id.* § 6.03(b). A person acts recklessly with respect to the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur. *Id.* § 6.03(c). The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint. *Id.*

## B. Analysis

In arguing that the evidence was insufficient to support his conviction, Ramos makes the following points on appeal: (1) Martinez testified that Ramos ran over her with his car but she suffered no broken bones or other serious injuries; (2) other than Martinez, no one saw the car run over her; (3) no one saw Ramos attempt to run her over; (4) there was evidence that Ramos was trying to prevent Martinez from throwing herself out of the car; (5) Martinez admitted being dependent on hydrocodone in the past; (6) hydrocodone was found in Martinez's purse on the day of the incident; (7) a photograph of Martinez entered into evidence shows that she "consumed substances which had an intoxicating effect precipitating excessive emotional emoting during this incident"; (9) Martinez's two miscarriages "may have exacerbated [her] hysterical conduct"; (10) Martinez's "history of argumentation and debate with [Ramos]" showed that she "could direct abusive outburst against [Ramos] due to the demands of her addiction"; (11) Martinez's testimony was "incredulous" and there "was sufficient evidence before [the jury] that such an event never happened."

Even assuming the truth of these statements,[4] we nevertheless find the evidence sufficient to support the essential elements of the offense. Martinez testified that, shortly after arguing with

---

bodily injury; or (B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.").

[4] We do not share Ramos's opinion that the photograph of Martinez entered into evidence shows that she was intoxicated. There was no testimony indicating that Martinez was intoxicated at the time of the incident. We note that, to the extent Martinez appeared disoriented and flushed in the photograph, that may have been because she was recently run over by a car.

Ramos about her phone, Ramos "pushed" her out of the car and she then "felt the back tire, the driver's side back tire around my feet and in a split second . . . [t]he tire went over my back." She stated the incident left her in "excruciating pain." Ramos testified that the argument was about hydrocodone and that, instead of pushing Martinez out of the car, he was trying to prevent her from exiting the car. However, the jury is the sole judge of the credibility of witnesses and the weight to be given the testimony, and it may choose to believe some testimony and disbelieve other testimony. *Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008). Therefore, Martinez's testimony alone was sufficient to establish that Ramos intentionally, knowingly, or recklessly caused her bodily injury by striking her with a vehicle. *See* TEX. PENAL CODE ANN. § 22.02. Even if we were to agree with Ramos that Martinez's testimony was unreliable, we may not act as a "thirteenth juror" by substituting our judgment for that of the jury. *See Brooks*, 323 S.W.3d at 905.

Because the evidence was sufficient to support the verdict, we overrule Ramos's sole issue.

## III. CONCLUSION

The trial court's judgment is affirmed.

DORI CONTRERAS GARZA,
Justice

Do Not Publish.
TEX. R. APP. P.
47.2(b).

Delivered and filed the
23rd day of July, 2015.

29